IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHIKITA WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-2096 |
| | § | |
| ALIEF INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Chikita Washington sued her former employer, the Alief Independent School District, alleging that she was unlawfully terminated because of her race, in violation of 42 U.S.C. §§ 1981 and 1983. (Docket Entry No. 1). The District moved to dismiss for failure to state a claim under § 1981, and, in the alternative, for failure to state a claim under § 1983. (Docket Entry No. 6). Washington timely filed an amended complaint, alleging that her § 1981 claim is brought through § 1983 and that the District had a "well-established custom of promoting animus against racial minorities." (Docket Entry No. 10). She responded to the District's motion to dismiss by arguing that the amended complaint made the motion moot. (Docket Entry No. 11). The District filed a separate motion to dismiss the first amended complaint, acknowledging that its earlier challenge to the § 1981 claim was moot, but reasserting its motion to dismiss for failure to state a claim under 42 U.S.C. § 1983 because Washington did not allege sufficient facts to plead the District's liability. (Docket Entry No. 15). Washington responded. (Docket Entry No. 17).

Based on the amended complaint, the motion and response, and the applicable law, the court grants the District's motion to dismiss, without prejudice. (Docket Entry No. 15).

Washington may amend no later than **October 17, 2019**.  The reasons for this ruling are set out below.

I.      **Background**

The facts are drawn from Washington's amended complaint allegations.  Washington, an African-American woman, alleges that she was unlawfully terminated from her employment as a special education teacher and student council manager at Taylor High School, because of her race.  (Docket Entry No. 10).  According to Washington, on January 13, 2018, she learned that Evaline Nguyen, a Taylor High student and student council member, was in the hospital.  (*Id.* at ¶ 12).  Washington went to the hospital to see Nguyen the following day.  (*Id.* at ¶ 13).  Nguyen's mother told Washington that Nguyen "had received a text from a friend"; posted on social media that "today is the day I'm going to end it all"; and then consumed Drano.  (*Id.*).  Nguyen's mother spoke little English, and another student translated for Washington.  (*Id.*).  Nguyen asked Washington to tell the school counselor what had happened.  (*Id.* at ¶ 14).  Washington informed Nguyen's counselor, named Moore, [1] as well as Destiny Lewis, one of the school's associate principals, about the suicide attempt.  (*Id.*).

On January 17, Taylor High teacher Stephanie Johnson asked Washington about Nguyen's absence.  (*Id.*).  Washington told Johnson that she could not discuss the matter with her.  (*Id.*).  Johnson asked if she could visit Nguyen, and Washington told her to ask Nguyen's parents for permission.  (*Id.*).  That night, Johnson and two other teachers, Arielle Brooks and another teacher named Deransburg,[2] visited Nguyen at the hospital.  (*Id.*).

---

[1] Washington does not include the full name in her amended complaint.
[2] Washington does not include the full name in her amended complaint.

On January 18, Brooks told Washington that Nguyen's mother had told Brooks about Nguyen "having some problems with" her father,[3] and Nguyen's mother could not believe that her child would "do what she did." (*Id.* at ¶ 15). Brooks understood Nguyen's mother to accuse her husband of abusing their daughter. (*Id.*). Brooks talked to her husband and her father, a retired police officer. (*Id.*). They believed that Nguyen's father had abused his daughter. (*Id.*). Brooks asked Washington for her thoughts on "the alleged child abuse." (*Id.*). Washington told Brooks that "she had known the Nguyens for three years and, although the parents were separated, they both supported their daughter and her efforts at the Student Council." (*Id.*).

On January 23, Washington met with Stacie Gibson, the District's Human Resources Director. (*Id.* at ¶ 11). Gibson asked Washington about Nguyen, and Washington related the described events. (*Id.*). Washington was placed on paid administrative leave until April 3, 2018, for failing to report possible child abuse. (*Id.* at ¶ 16).

On January 26, Washington met with Elizabeth Veloz-Powell, the District's Human Resources Superintendent, and Darrell Alexander, the District's Human Resources Executive Director. (*Id.*). At that meeting, Veloz-Powell told Washington that she would remain on administrative leave pending an investigation. (*Id.*). Veloz-Powell showed Washington a letter stating that "they believed" that Washington failed to report possible child abuse to Child Protective Services, as requKimberlyRubiired by law, and that the failure would be reported to the State Board for Educator Certification. (*Id.*).

On February 8, Washington again met with Veloz-Powell, who asked her to resign. (*Id.* at ¶ 17). Washington refused. (*Id.*). She told Veloz-Powell that the teacher's union would appeal

---

[3] The amended complaint is ambiguous as to whether Nguyen or her mother was having problems with Nguyen's father.

any decision to terminate her employment. (*Id.*). Washington exhausted her administrative remedies, and, on March 20, resigned effective May 29, 2018. (*Id.*).

In this lawsuit, Washington alleges that she was replaced by a Caucasian teacher, (*id.* at ¶ 18); that similarly situated non-African-American employees had not received similar discipline—administrative leave pending the investigation and report to the State Board—for similar conduct (*id.*); and that the District had a history of racial animus, (*id.* at ¶ 30). She further alleges that Brooks tried to recant her statement that Washington failed to report the suspected child abuse, but the District would not consider it. (*Id*. at ¶ 18).

## II. The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012); *Carroll*

*v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court." *Pervasive Software*, 688 F.3d at 232 (quotation omitted).

### III. Analysis

#### A. Pleading a Policy or Custom

In her amended complaint, Washington alleges that the District "clearly demonstrated its well-established custom of promoting animus against racial minorities, such as Plaintiff, by replacing Plaintiff with a Caucasian teacher and by not placing its Caucasian employees on the administrative leave in situations that were same or similar to those described in" her complaint. (Docket Entry No. 10 at ¶ 30).

A § 1983 municipal liability claim requires factual allegations "showing that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)). Official policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). When relying on a practice, a plaintiff must allege facts showing that "there existed '[a] persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents . . . policy.'" *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). The complaint must specifically identify the policy that allegedly caused the adverse action. *See Spiller v. City of Tex. City, Police Dep't*, 130

5

F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts.").

Washington has failed to allege a policy that caused her allegedly discriminatory placement on administrative leave pending an investigation into whether she failed to report suspected child abuse, as required by law, and, if supported, a report to the State Board. In her response to the motion to dismiss, Washington argues that the complaint "states that the Administrative Leave is the official policy" of the District, but alleges no facts, merely the conclusion. (*See* Docket Entry No. 17 at 4-5).

In support of her claim that the District has a "well-established custom" of racial discrimination, Washington alleges that the District had not placed non-African-American employees on administrative leave in the same or similar situations. (Docket Entry No. 10 at ¶ 30). But Washington pleads no facts to support this statement. *See Spiller*, 130 F.3d at 167. "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 733 (S.D. Tex. 2016) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *see also Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability." (internal quotation omitted)). Washington alleges that a Caucasian employee replaced her, but without any connection to similar circumstances, the allegation is insufficient to plead a policy or custom of racially disparate discipline for failing to report suspected child abuse.

Washington similarly fails to allege facts showing that any policy or custom was an official policy or custom of the District. "A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas*

*Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation omitted)). Washington alleges that "she believes" Veloz-Powell was acting "on behalf and with the authority of the District's Board of Trustees in her managerial capacity" when she decided to place Washington on administrative leave and ask her to resign. (Docket Entry No. 10 at ¶¶ 26-27). In her response, Washington argues that Veloz-Powell is considered a policymaker "because she was acting under the authority" of the District's board of trustees "in her managerial" role. (Docket Entry No. 17 at 3).

A school district is liable for the "unconstitutional conduct of its policymakers, including persons to whom it has delegated policymaking authority in certain areas." *Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007). Under Texas law, the board of trustees is the final policymaking authority for an independent school district for employment decisions. *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 464 (5th Cir. 2003). Washington alleges, based on "knowledge and information," that Veloz-Powell was "acting on behalf of" the District's board of trustees, but she does not plead a basis for inferring the board's official action. Washington fails to sufficiently plead this prong of liability.

### B. Pleading Discrimination

Washington alleges that the decision to place her on administrative leave and ask her to resign was "based solely or predominately on Plaintiff's race," (Docket Entry No. 10 at ¶¶ 24-25); that she "has knowledge that her position is currently held by a Caucasian teacher," (*id*. at ¶ 18); and that she "knows that similarly situated non-African American employees have been treated more favorably by AISD and were not disciplined for the same or similar occurrences," (*id*.). The District argues that the claim fails because "Washington's race discrimination claim against [the District] remains based entirely on legal conclusions premised on conclusory factual allegations." (Docket Entry No. 15 at 2).

7

A § 1981 discrimination claim requires a plaintiff to allege facts showing that: (1) she is a "member of a racial minority; (2) [d]efendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—here, making a contract." *Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). The factual allegations must support an inference that the defendant's interference with the plaintiff's right or benefit was racially motivated. *Id.* A plaintiff may use either direct or circumstantial evidence to show intent. If, as here, a plaintiff relies on circumstantial evidence, the claim is examined under the *McDonnell Douglas* burden-shifting framework. *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Though a "plaintiff need not allege the prima facie case of that evidentiary framework to survive a Rule 12 motion to dismiss . . . [a]llegations related to that prima facie inquiry may nonetheless be helpful in satisfying the general *Iqbal* plausibility standard." *Haskett v. Cont'l Land Res., L.L.C.*, 668 F. App'x 133, 134 (5th Cir. 2016) (citations omitted).

Washington must plead facts that create an inference of discrimination due to her race. *See Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (affirming dismissal because the plaintiff did not allege facts linking his employer's actions with his race or national origin); *Davis v. Matagorda Cty.*, No. 3:18-CV-00188, 2019 WL 1015341, at *9 (S.D. Tex. Mar. 4, 2019), *report and recommendation adopted*, No. 3:18-CV-00188, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019) (denying motion to dismiss because the plaintiff alleged facts giving rise to a reasonable inference that he was terminated because of his race); *Reed v. Brady Trucking, Inc.*, No. H-18-4437, 2019 WL 1244100, at *11 (S.D. Tex. Mar. 18, 2019) (granting motion to dismiss because the plaintiff failed to allege facts that could support an inference that he was discriminated against based on his race). "'Naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to

dismiss." *Body By Cook*, 869 F.3d at 386 (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988)).

Washington adequately pleads the first element of a § 1981 claim: she is African-American. (Docket No. 10 at ¶ 9). But Washington makes only generalized allegations about the District's alleged discrimination against African-American employees. She does not allege any prior incidents involving other, similarly situated, non-African-American employees. *See Body By Cook, Inc.*, 869 F.3d at 386 ("An allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." (internal quotation omitted)). Washington's complaint fails to identify any instances in which the District treated similarly situated non-African American employees suspected of failure to report possible child abuse of a student more favorably than Washington. Washington fails to sufficiently plead a claim under § 1981.

### III. Conclusion

The District's motion to dismiss is granted, without prejudice and with leave to amend. (Docket Entry No. 15). Washington must amend, one more time, consistent with Rule 11, no later than **October 17, 2019**.

SIGNED on September 27, 2019, at Houston, Texas.

                                                                              _____
                                                                              Lee H. Rosenthal
                                                                              Chief United States District Judge